UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. LIBAN YASIN ALISHIRE,
2. AHMED YASIN ALI, and
3. KHADAR JIGRE ADAN,

Defendants.

CR 22.222 NEB/DJF

**INDICTMENT**

18 U.S.C. § 371
18 U.S.C. § 666
18 U.S.C. § 1343
18 U.S.C. § 1957

THE UNITED STATES GRAND JURY CHARGES THAT:

At times relevant to the indictment:

## INTRODUCTION

1.      The defendants participated in a multi-million dollar scheme to defraud the federal child nutrition program, a program designed to provide free meals to needy children. The defendants obtained, misappropriated, and laundered millions of dollars in program funds that were intended as reimbursements for the cost of serving meals to children. The defendants exploited changes in the program intended to ensure underserved children received adequate nutrition during the Covid-19 pandemic. Rather than feed children, the defendants exploited the Covid-19 pandemic—and the resulting program changes—to enrich themselves by fraudulently misappropriating millions of dollars in federal child nutrition program funds, which they spent for their own personal benefit on such expenditures as vehicles and real estate.



**A.     Background on the Federal Child Nutrition Program**

2.      The Food and Nutrition Service is an agency of the United States Department of Agriculture (USDA) that administers various federal child nutrition programs, including the Summer Food Service Program and Child and Adult Care Food Program (together, the "Federal Child Nutrition Program").

3.      The Summer Food Service Program is a federal program established to ensure that children continue to receive nutritious meals when school is not in session. The Summer Food Service Program reimburses non-profit organizations and other participating entities that serve free healthy meals and snacks to children and teens in low-income areas.

4.      The Child and Adult Care Food Program is a federal program that reimburses non-profit organizations and other participating entities that serve healthy meals and snacks to children and adults at participating child care centers, day care homes, and after-school programs.

5.      The Federal Child Nutrition Program operates throughout the United States. The USDA's Food and Nutrition Service administers the programs at the national and regional levels by distributing federal funds to state governments, which provide oversight over the Federal Child Nutrition Program.

6.      The Minnesota Department of Education (MDE) administers the Federal Child Nutrition Program in Minnesota.

7.      Meals funded by the Federal Child Nutrition Program are served by "sites." Each site participating in the Federal Child Nutrition Program must be sponsored by a sponsoring organization that is authorized to participate in the

Federal Child Nutrition Program. Sponsors are required to submit an application to MDE for each site. Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

8.     Sponsors submit reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA then provides federal reimbursement funds on a per-meal basis. MDE provides the federal funds to the sponsoring agency, which in turn pays the reimbursements to the sites under its sponsorship. The sponsoring agency retains 10 to 15 percent of the funds as an administrative fee in exchange for sponsoring the sites, submitting reimbursement claims, and dispersing the federal funds.

9.     Historically, the Federal Child Nutrition Program has generally functioned by providing meals to children involved in educational-based programs or activities. During the Covid-19 pandemic, however, the USDA waived some of the standard requirements for participation in the Federal Child Nutrition Program. Among other things, the USDA allowed for-profit restaurants to participate in the program. The USDA also allowed for off-site food distribution to children outside of educational programs. At the same time, the state government's stay-at-home order and telework policies made it for difficult to oversee the program. These changes left the program vulnerable to fraud and abuse.

**B.     Feeding Our Future**

10.     Feeding Our Future was a non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Aimee Bock was the founder and executive director of Feeding Our Future.

11.     Prior to the onset of the Covid-19 pandemic, Feeding Our Future was a small non-profit that sponsored the participation of daycares and after-school programs in the Federal Child Nutrition Program.

12.     Beginning in approximately April 2020, Feeding Our Future dramatically increased the number of sites under its sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites. Feeding Our Future went from receiving and disbursing approximately $3.4 million in federal funds to sites under its sponsorship in 2019 to nearly $200 million in 2021.

13.     Bock oversaw a massive scheme to defraud carried out by sites under the sponsorship of Feeding Our Future. Bock and Feeding Our Future sponsored entities that submitted fraudulent reimbursement claims and fake documentation. Bock and her company sponsored the opening of nearly 200 Federal Child Nutrition Program sites despite knowing that the sites intended to and did submit fraudulent claims.

14.     In exchange for sponsoring the sites' fraudulent participation in the program, Feeding Our Future received nearly $18 million in Federal Child Nutrition Program funds as administrative fees in 2021. Because the amount of administrative fees it received was based on the amount of federal funds received by sites under its sponsorship, Feeding Our Future received tens of millions of dollars in administrative fees to which it was not entitled due to its sponsorship and facilitation of sites fraudulent participating in the program.

15.     In addition to receiving tens of millions in administrative fees, Feeding Our Future employees also solicited and received bribes and kickbacks from

individuals and sites under the sponsorship of Feeding Our Future. In effect, Feeding Our Future operated a pay-to-play scheme in which individuals seeking to operate fraudulent sites under the sponsorship of Feeding Our Future had to kick back a portion of their fraudulent proceeds to Feeding Our Future employees. Many of these kickbacks were paid in cash or disguised as "consulting fees" paid to shell companies created by Feeding Our Future employees to conceal the true nature of the payments and make them look legitimate.

### C.    The Defendants and Their Roles

16.    Defendant LIBAN YASIN ALISHIRE was the president and owner of Community Enhancement Services Inc., a company located in the JigJiga Business Center in Minneapolis. Community Enhancement Services operated a Federal Child Nutrition Program site under the sponsorship of Feeding Our Future. The Community Enhancement Services site was also located in the JigJiga Business Center, a cultural mall in Minneapolis owned by ALISHIRE and KHADAR JIGRE ADAN.

17.    Ace Distribution Services Inc. was a shell company created by ALISHIRE and later transferred to the ownership of ALI. Ace Distribution Services purported to be in the business of providing meals to be served at the Federal Child Nutrition Program site run by Community Enhancement Services. Ace Distribution Service's registered address was the JigJiga Business Center.

18.    Hoodo Properties LLC was a shell company owned by ALISHIRE and used to purchase real estate in Kenya. ALISHIRE listed the JigJiga Business Center as Hoodo Properties' registered address.

19.     Lake Street Kitchen was a company owned and controlled by defendants LIBAN YASIN ALISHIRE, AHMED YASIN ALI, and KHADAR JIGRE ADAN. Lake Street Kitchen opened a Federal Child Nutrition Program site under the sponsorship of Feeding Our Future. The Lake Street Kitchen site was located in the JigJiga Business Center.

20.     KHADAR JIGRE ADAN was the CEO of Lake Street Kitchen. AHMED YASIN ALI served as the President and Operations Manager of Lake Street Kitchen. ALISHIRE held himself out as the manager of the Lake Street Kitchen site.

21.     Hadith Yusuf Ahmed was a Feeding Our Future employee who solicited and received bribes and kickbacks from individuals and companies involved in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

### Count 1
(Conspiracy to Commit Wire Fraud)

22.     From in or about September 2020 through in or about 2022, the defendants,

LIBAN YASIN ALISHIRE,
AHMED YASIN ALI, and
KHADAR JIGRE ADAN,

conspired with each other, and others known and unknown to the grand jury, to devise a scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, transmitted or caused to be transmitted writings, signs, signals, pictures, or sounds by means of wire, radio or television communication in interstate or foreign commerce, in violation of Title 18, United States Code, Sections 371 and 1343.

### Object and Purpose of the Conspiracy

23.     The object and purpose of the conspiracy was to carry out a fraudulent scheme to obtain Federal Child Program funds by submitting fraudulent claims that they were serving meals to hundreds or thousands of children a day.

### Manner and Means of the Conspiracy

24.     The conspirators used the following manner and means, among others, to accomplish the objects and purpose of the conspiracy:

a.      LIBAN ALISHIRE enrolled Community Enhancement Services in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. ALISHIRE claimed to operate the Community Enhancement Services site at the JigJiga Business Center in Minneapolis.

b.      ALISHIRE claimed—falsely—that the Community Enhancement Services site was serving meals to as many as 2,700 children a day, seven days a week. In support of these claims, ALISHIRE submitted fake attendance rosters and invoices.

c.      ALISHIRE created a fake distribution company, Ace Distribution Services, that purported to provide meals to be served to children at the Community Enhancement Services site. ALISHIRE created and submitted invoices fraudulently claiming that Ace Distribution Services was entitled to hundreds of thousands of dollars in Federal Child Nutrition Program funds for providing meals to be served at the site.

d.      Between approximately February and October 2021, Community Enhancement Services claimed, falsely, to have served more than 800,000 meals to

7

children. Based on these fraudulent claims, ALISHIRE and his co-conspirators received more than $1.6 million in Federal Child Nutrition Program funds from Feeding Our Future. ALISHIRE transferred much of this money to a shell company and used the federal funds to purchase real estate in Kenya, a truck and a boat.

e.    ALISHIRE also paid more than $200,000 in kickbacks to a Feeding Our Future employee, Hadith Ahmed, in exchange for Feeding Our Future's sponsorship of his company's fraudulent participation in the Federal Child Nutrition Program. This represented approximately 10 percent of the Federal Child Nutrition Program funds that Community Enhancement Services fraudulently received from Feeding Our Future.

f.    ALISHIRE and his co-defendants, AHMED YASIN ALI and KHADAR JIGRE ADAN, created a second Federal Child Nutrition Program site in the JigJiga Business Center.  This second site was run by Lake Street Kitchen and operated under the sponsorship of Feeding Our Future.

g.    Lake Street Kitchen claimed to have served 300 meals a day, seven days a week, from approximately December 2020 to April 2021. In support of these fraudulent claims, ALISHIRE, ALI, and ADAN prepared and submitted fraudulent meal counts, attendance rosters, invoices, and other documentation. Again, ALISHIRE submitted fake invoices claiming that his fake distribution company, Ace Distribution Services, was entitled to Federal Child Nutrition Program funds for providing meals to be served at the Lake Street Kitchen site.

h.    Based on these claims, Lake Street Kitchen received approximately $180,000 in Federal Child Nutrition Program reimbursements.

Rather than use these funds to feed children, ALISHIRE, ALI, and ADAN transferred almost all of the money to their personal accounts.

**Acts in Furtherance of the Conspiracy**

25.     In furtherance of the conspiracy and to effect its unlawful objectives, the defendants committed and caused to be committed the following overt acts, among others, in the State and District of Minnesota, and elsewhere:

*Community Enhancement Services Inc.*

26.     On or about December 21, 2020, LIBAN ALISHIRE and Aimee Bock submitted an application to enroll Community Enhancement Services Inc. as a site in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

27.     In or about April 2021, ALISHIRE submitted to Feeding Our Future meal count forms claiming that the Community Enhancement Services site served meals to 2,500 to 2,700 children a day, seven days a week, in March 2021.

28.     In or about May 2021, ALISHIRE submitted to Feeding Our Future meal count forms claiming that the Community Enhancement Services site served meals to 2,700 children a day, seven days a week, in April 2021. ALISHIRE also submitted fake invoices purporting to document the purchase of food from a meal vendor as well as a fake attendance roster.

29.     In or about June 2021, ALISHIRE submitted to Feeding Our Future a meal count form claiming that the Community Enhancement Services site served meals to 2,980 children a day in June 2021.

30.    On or about July 15, 2021, ALISHIRE registered Ace Distribution Services LLC with the Minnesota Secretary of State. ALISHIRE was the owner of Ace Distribution Services.

31.    On or about August 24, 2021, ALISHIRE signed a vendor contract providing that Ace Distribution Services would receive Federal Child Nutrition Program reimbursement funds for providing meals to the Community Enhancement Services site.

32.    On or about September 1, 2021, ALISHIRE sent an email to Feeding Our Future with the subject line "Community Enhancement Services (CES)—July Invoices." Attached to the email were a series of invoices claiming that Ace Distribution Services had been providing breakfast and lunch for 1,000 children a day to be served at the Community Enhancement Services site beginning on July 1, 2021—two weeks before ALISHIRE created Ace Distribution Services. The invoices claimed that Ace Distribution Services was entitled to more than $150,000 in Federal Child Nutrition Program funds for meals provided in July 2021.

33.    Between February and October 2021, Community Enhancement Services received more than $1.6 million in Federal Child Nutrition Program reimbursements from MDE.  ALSHIRE sent much of this money to himself and his co-conspirators via shell companies created and used to receive and launder the proceeds of the fraud scheme.

34.    For example, on or about June 23, 2021, ALSHIRE wrote a $54,600 check from Community Enhancement to Hoodo Properties, a shell company created and used by ALSHIRE to receive and launder fraud proceeds.

35.     On or about July 22, 2021, ALSHIRE wrote a $98,600 check from Community Enhancement to Hoodo Properties.

36.     On or about November 2, 2021, ALSHIRE wrote a $45,000 check from Community Enhancement to Hoodo Properties.

37.     ALISHIRE also paid kickbacks to a Feeding Our Future employee, Hadith Yusuf Ahmed, in exchange for his role in sponsoring and facilitating Community Enhancement Services's fraudulent participation the Federal Child Nutrition Program. These kickbacks were disguised as consulting payments to a shell company created by Hadith Ahmed. For example, on or about June 2, 2021, ALSHIRE wrote a $30,000 check from Community Enhancement Services to Mizal Consulting, the shell company created and used by Hadith Ahmed to receive and conceal bribe and kickback payments.

38.     On or about July 2, 2021, ALISHIRE wrote a $72,500 check from Community Enhancement Services to Mizal Consulting.

### *Lake Street Kitchen*

39.     On or about September 17, 2020, Aimee Bock and ALISHIRE submitted an application to enroll Lake Street Kitchen as a Federal Child Nutrition Program site under the sponsorship of Feeding Our Future. ALISHIRE signed the application as the manager of Lake Street Kitchen. The application stated that the site would be located at the JigJiga Business Center in Minneapolis.

40.     On or about September 22, 2020, AHMED ALI and KHADAR ADAN opened a bank account in the name of Lake Street Kitchen at Home Federal Savings Bank.

11

41.     On or about January 5, 2021, ALISHIRE sent an email with the subject line "Lake Street Kitchen Invoice 12/20/20 to 01/03/21" to a Feeding Our Future employee. Attached to the email were meal count forms claiming that Lake Street Kitchen served meals to 300 children a day, seven days a week, between December 20, 2020, and January 3, 2021. ALISHIRE signed the meal count sheets as the site supervisor. ALISHIRE also attached fake invoices purporting to document the purchase of food to be served at the Lake Street Kitchen site.

42.     On or about January 13, 2021, ALISHIRE sent an email with the subject line "Lake Street Kitchen Invoice—January Week 2" to Feeding Our Future. The email contained a meal count sheet claiming that the Lake Street Kitchen site served meals to 300 children a day the week of January 10, 2021. ALISHIRE signed the meal count sheet.

43.     On or about January 19, 2021, Lake Street Kitchen received approximately $16,688 in Federal Child Nutrition Program funds. That same day, ALI wrote a $13,000 check from Lake Street Kitchen to ALISHIRE. The memo line on the check stated that the money was ALISHIRE's "Profit Split."

44.     On or about February 12, 2021, AHMED ALI sent an email to Feeding Our Future complaining that "[w]e are still waiting on our payment from January. How can we continue to operate a program if we are not being paid as agreed upon?"

45.     Four days later, on or about February 16, 2021, Lake Street Kitchen received approximately $44,826 in Federal Child Nutrition Program funds from Feeding Our Future. Prior to the deposit of this check, the Lake Street Kitchen account had an existing balance of approximately $542.

46.     Three days later, on or about February 19, 2021, AHMED ALI and KHADAR ADAN distributed more than two-thirds of this money among themselves and ALISHIRE as "profit."

47.     On or about February 19, 2021, KHADAR ADAN wrote two checks to himself from Lake Street Kitchen—one for $10,000 and one for $5,000. ADAN indicated on the memo line that the checks were "profit sharing." ADAN also wrote a $7,500 check from Lake Street Kitchen to AHMED ALI for his "profit split."

48.     On or about February 19, 2021, AHMED ALI wrote a $7,500 check from Lake Street Kitchen to ALISHIRE. The memo line on the check indicated the money was ALISHIRE's "profit split."

49.     On or about April 1, 2021, AHMED ALI sent an email with the subject line "Lake Street Kitchen—March Invoices" to Hadith Ahmed and another Feeding Our Future employee. Attached to the email were meal count forms claiming that the Lake Street Kitchen site served supper and a snack to 300 children a day, seven days a week, in March 2021.

50.     On or about June 4, 2021, ALISHIRE sent an email to Home Federal Savings Bank asking to be added as a signor on the Lake Street Kitchen bank account.

51.     On or about November 22, 2021, ALISHIRE sent an email with the subject line "October Invoices Back-up Receipts" to Feeding Our Future. Attached to the email were invoices purporting to show that Lake Street Kitchen had purchased more than $200,000 worth of food from Ace Distribution Services in October 2021.

52.     Based on these claims, ALI, ADAN and their co-conspirators received approximately $180,000 in Federal Child Nutrition Program reimbursements from December 2020 to April 2021. Rather than use this money to feed children, ALI and ADAN wrote checks distributing nearly all of the money to themselves and ALISHIRE as "profit." ALI, ADAN, and ALISHIRE sent much of this money to themselves via shell companies created and used to receive and launder the proceeds of the fraud scheme.

All in violation of Title 18, United States Code, Section 371.

### Counts 2-7
(Wire Fraud)

53.     Paragraphs 1 through 52 are incorporated herein.

54.     From at least in or about September 2020 through in or about January 2022, in the State and District of Minnesota, and elsewhere, the defendants as set forth below, and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

55.     On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendants, as set forth below, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain writings, signs, signals, and sounds, including the following:

| Count | Defendants | Date (on or about) | Wire Details |
|-------|-----------|-------------------|--------------|
| 2 | LIBAN ALISHIRE AHMED ALI KHADAR ADAN | January 5, 2021 | An email from ALISHIRE to Feeding Our Future with the subject line "Lake Street Kitchen Invoice 12/20/20 to 01/03/21" that passed through servers located outside the State of Minnesota |
| 3 | LIBAN ALISHIRE AHMED ALI KHADAR ADAN | February 12, 2021 | An email from ALI to Feeding Out Future complaining that "[w]e are still waiting on our payment from January. How can we continue to operate a program if we are not being paid as agreed upon?" that passed through servers located outside the State of Minnesota |
| 4 | LIBAN ALISHIRE | February 27, 2021 | An email from ALISHIRE to Hadith Ahmed with the subject line "Community Enhancement Services–Sponsor Organization" that passed through servers located outside the State of Minnesota |
| 5 | LIBAN ALISHIRE | July 8, 2021 | An email from ALISHIRE to Hadith Ahmed with the subject line "Community Enhancement Services (CES) June Invoice" that passed through servers located outside the State of Minnesota |
| 6 | LIBAN ALISHIRE | September 1, 2021 | An email from ALISHIRE to Feeding Our Future with the subject line "Community Enhancement Services (CES) – July Invoices" that passed through servers located outside the State of Minnesota |
| 7 | LIBAN ALISHIRE AHMED ALI KHADAR ADAN | November 22, 2021 | An email from ALISHIRE to Feeding Our Future with the subject line "October Invoices Back-up Receipts" that passed through servers located outside the state of Minnesota |

All in violation of Title 18, United States Code, Section 1343.

## Count 8
(Conspiracy to Commit Federal Programs Bribery)

56.     Paragraphs 1 through 52 are incorporated herein.

57.     From in or about May 2021 to in or about July 2021, in the State and District of Minnesota, the defendant,

LIBAN YASIN ALISHIRE

conspired with Hadith Yusuf Ahmed and others known and unknown to the Grand Jury to commit federal programs bribery, that is, to corruptly agree to give anything of value to any person, with intent to influence and reward an agent of an organization, to wit, Hadith Yusuf Ahmed, in connection with any business, transaction and series of transactions with Feeding Our Future involving anything of value of $5,000 or more, that is, in exchange for sponsoring their fraudulent participation in the Federal Child Nutrition Program, where Feeding Our Future received benefits in excess of $10,000 under federal programs involving grants, contracts, subsidies, loan guarantees, insurance and other forms of federal assistance in any one-year period, in violation of Title 18, United States Code, Sections 666(a)(2).

## Purpose and Object of the Conspiracy

58.     The object and purpose of the conspiracy was for individuals and entities participating in the fraudulent scheme to obtain Federal Child Nutrition Program funds to pay bribes and kickbacks to a Feeding Our Future employee in exchange for Feeding Our Future's sponsorship of their fraudulent participation in the Federal Child Nutrition Program.

## Manner and Means of the Conspiracy

59.     The conspirators used the following manner and means, among others, to accomplish the objects and purpose of the conspiracy:

a.     A Feeding Our Future employee, Hadith Yusuf Ahmed, solicited and accepted bribes and kickbacks from LIBAN YASIN ALISHIRE in exchange for sponsoring his company's fraudulent participation in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future.

b.     Hadith Ahmed created a fake consulting company, Mizal Consulting LLC, for use in accepting and hiding the bribe and kickback payments.

c.     ALISHIRE paid bribes and kickbacks to Hadith Ahmed in exchange for his role in sponsoring and facilitating ALISHIRE's fraudulent participation in the Federal Child Nutrition Program. ALISHIRE disguised the bribe and kickback payments as consulting payments or other legitimate payments to Hadith Ahmed's fake consulting company, Mizal Consulting LLC. In reality, the payments were bribes and kickbacks.

## Acts in Furtherance of the Conspiracy

60.     The conspirators used the following manner and means, among others, to accomplish the objects and purpose of the conspiracy:

61.     On or about December 1, 2020, Hadith Ahmed registered Mizal Consulting LLC with the Minnesota Secretary of State.

62.     On or about May 20, 2021, ALISHIRE wrote a $45,000 check to Mizal Consulting LLC for "consultation."

63.     On or about May 20, 2021, ALISHIRE wrote a $15,000 check from Ace Interpretation Services Inc. to Mizal Consulting LLC for "translation/interpretation."

64.     On or about June 2, 2021, ALISHIRE wrote a $33,000 check from Community Enhancement Services Inc. to Mizal Consulting LLC for "consultation."

65.     On or about June 2, 2021, ALISHIRE wrote a $30,000 check from Community Enhancement Services Inc. to Mizal Consulting LLC for "consultation."

66.     On or about July 2, 2021, ALISHIRE wrote a check for $72,500 from Community Enhancement Services Inc. to Mizal Consulting LLC for "backdated consulting."

All in violation of Title 18, United States Code, Section 371.

## Counts 9-13
(Federal Programs Bribery)

67.     Paragraphs 1 through 52 and 57 through 66 are incorporated herein.

68.     On or about the dates set forth below, in the State and District of Minnesota, and elsewhere, the defendants as set forth below, corruptly gave, offered and agreed to give anything of value to any person with intent to influence and reward an agent of an organization, as set forth below, in connection with any business, transaction and series of transactions of each organization involving anything of value of $5,000 or more, where such organization received benefits in excess of $10,000 annual under federal programs involving grants, contracts, subsidies, loan guarantees, insurance and other forms of federal assistance in any one-year period, as follows:

| Count | Defendant(s) | Date (on or about) | Payment |
|---|---|---|---|
| 9 | LIBAN ALISHIRE | May 20, 2021 | A $45,000 check from ALISHIRE to Mizal Consulting LLC |
| 10 | LIBAN ALISHIRE | May 20, 2021 | A $15,000 check from Ace Interpretation Services Inc. to Mizal Consulting LLC |
| 11 | LIBAN ALISHIRE | June 2, 2021 | A $33,000 check from Community Enhancement Services to Mizal Consulting LLC |
| 12 | LIBAN ALISHIRE | June 2, 2021 | A $30,000 check from Community Enhancement Services to Mizal Consulting LLC |
| 13 | LIBAN ALISHIRE | July 2, 2021 | A $72,500 check from Community Enhancement Services to Mizal Consulting LLC |

All in violation of Title 18, United States Code, Section 666.

## Counts 14-21
(Money Laundering)

69.     Paragraphs 1 through 52 are incorporated herein.

70.     On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendants as set forth below, knowingly engaged and attempted to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, as described below, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Defendant(s) | Date (on or about) | Transaction |
|---|---|---|---|
| 14 | AHMED ALI | May 19, 2021 | A $37,884 check from Lake Street Kitchen to Khadar Adan |
| 15 | KHADAR ADAN | May 19, 2021 | A $18,942 check from Lake Street Kitchen to Ahmed Ali |
| 16 | LIBAN ALISHIRE | July 1, 2021 | A check for $37,408 from Hoodo Properties LLC to East Side Auto for the purchase of a 2018 Ford F150 pickup truck |
| 17 | LIBAN ALISHIRE | July 6, 2021 | A $25,000 check from Ace Interpretation Services to Hannay's Marine for the purchase of a Sea Ray 185 Sport boat |
| 18 | LIBAN ALISHIRE | September 22, 2021 | A $57,000 wire transfer from ALISHIRE to Individual B.F. at Banque Cantonale de Geneve towards the purchase of a unit at the Karibu Palms Resort in Diani Beach, Kenya |
| 19 | LIBAN ALISHIRE | November 22, 2021 | A $216,000 wire transfer from Hoodo Properties to Jaafar Jelle & Co. towards the purchase of a unit at the Karibu Palms Resort in Diani Beach, Kenya |
| 20 | LIBAN ALISHIRE | January 19, 2022 | An $85,000 wire transfer from Hoodo Properties to Abdulrahman Saad and Associates towards the purchase of a 5-bedroom apartment in Nairobi, Kenya |
|  |  |  |  |
| 21 | AHMED ALI | February 9, 2022 | A $30,000 check from Lake Street Kitchen to Khadar Adan |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS

71.     Counts 1 through 21 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c), and pursuant to Title 18, United States Code, Section 982(a)(1).

72.     If convicted of any of Counts 1-13 of this Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to Counts 1-13 of the Indictment.

73.     If convicted of any of Counts 14-21 of this Indictment, the defendants shall also forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957 and any property traceable to such property.

74.     The property subject to forfeiture includes, but is not limited, to: (1) a Sea Ray 185 Sport boat, with attached motor; (2) a 2010 ShoreLand'r Bunk trailer, VIN: 1MDAJWR17AA440313; and (3) a 2018 Ford F150 pickup truck, VIN: 1FTEW1EG8FC31226.

75.     If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title

18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____     _____

UNITED STATES ATTORNEY          FOREPERSON