UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-CR-222 (NEB/DTS) |
| Plaintiff, | |
| v. | **DEFENDANT KHADAR ADAN'S POSITION REGARDING SENTENCING** |
| KHADAR JIGRE ADAN, | |
| Defendant. | |

Khadar Adan, by and through his undersigned attorneys, respectfully submits the following position with respect to sentencing.

**Relevant Facts: Adan's Offense**

On August 27, 2025, a complaint was filed against Adan charging him with one count of federal misdemeanor theft of Government funds in violation of 18 U.S.C. § 641. Adan pled guilty to this offense on August 28, 2025.

In his plea, Adan admitted to taking funds that ultimately derived from a large fraud scheme with many more culpable participants. Per his plea, Adan was the owner of the Jigjiga Business Center, which housed several businesses that Adan had an ownership interest in. One such business was Lake Street Kitchen, which Adan owned a portion of along with his colleagues Liban Alishire and Achmed Ali.

Alishire, who pled guilty before this Court on January 24, 2023, admitted to using Lake Street Kitchen to carry out a long-running and highly profitable fraud scheme. (Doc. 70). Using forged invoices which he created and a phony charity he started,

1

Alishire took considerable sums from the Minnesota Department of Education by purporting to feed children. While some food was provided, Alshire vastly inflated the amount of food he claimed to serve. (Doc. 245, ¶ 8-11).

Adan was unaware of the full scale of Alishire's activities and did not actively participate in his scheme. Adan's relatively minor role in the scheme was that he received money which he knew was ultimately derived from Alishire's overbilling. Per the terms of the plea, Adan was aware of the very high probability that not more than $1,000 of funds he received from Lake Street Kitchen represented criminal fraud proceeds. *Id.* ¶ 12-13).

## Relevant Facts: Adan's Biography

Adan is a naturalized U.S. citizen originally from Jigjiga, Ethiopia. For the first several decades of his life, he lived in Ethiopia and later Kenya. Adan was the city councilor of Jigjiga from 1993 to 1994. In this position, Adan was an outspoken anti-corruption advocate, which ultimately lead to him being arrested and imprisoned alone in a shipping container for six months. He was subjected to beatings and torture while imprisoned, but as harsh as this treatment was, he was fortunate not to be killed. Most of the people in the same military camp as him were executed. Several years later while fleeing from the same soldiers that imprisoned him, Adan was shot in the hand, and received a significant injury that was untreated until he came to the United States. This treatment ultimately required amputation of one of his fingers.

As the region destabilized, Adan and his family moved to Kenya, and had to take shelter in a refugee camp from 1997 to 1999.

Adan came to the United States on August 30th, 1999. He and his family still celebrate this day together. Initially, Adan lived in San Jose, California, where he worked as a cab driver. He worked 16 hours or more a day, seven days a week, saving money with the eventual goal of starting his own business.

In 2006, he moved to Kent, Washington, and began using the money he made in the United States to start several business ventures overseas: He built the Nogob Hotel in Jigjiga, Ethiopia using several loans from Ethiopian banks and his considerable savings, and this venture turned out to be highly profitable. Ethiopia was, at the time, still highly unstable and Adan did not feel safe having to travel to and from the country to run his hotel. He sold the hotel in 2014 for more than $1.3 million U.S. dollars and decided to put his profits to work in the United States.

When Adan moved to Minneapolis in 2016, he put what remained of this money into a new business venture: the Jigjiga business center at 1516 East Lake Street, named after his hometown in Ethiopia. Adan's vision when he started the business center was to create spaces within his community for immigrants and minorities to own their own business.  This building remains an important economic and cultural fixture of the East Lake Street community. The Jigjiga business center houses an events center, several cafes, assorted shops, religious and tutoring centers for children, a clinic, a dentist, and a popular coffee shop.

## Relevant Law

As a federal misdemeanor, Adan's offense is eligible for up to 5 years of probation pursuant to 18 U.S.C. § 3561(c)(2).

When determining a reasonable sentence, the Court must consult the sentencing factors outlined in outlined in 18 U.S.C. § 3553(a) to arrive at a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Those purposes include:

> "[T]he need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

In Adan's case, the sentencing guidelines as calculated by the probation office designate a total offense level of 8, which for a category I offender like Adan yields a recommendation of zero to six months of imprisonment. A sentence of imprisonment is not required. *See* USSG §5C1.1(b). Furthermore, the guidelines recognize that for offenses in this area of the federal sentencing table "a sentence other than a sentence of imprisonment…is generally appropriate." *Id.*, App. Note 10.

These guidelines are of course not binding upon the Court, but they nevertheless reflect a reasonable starting point for assessing the proportionality of a sentence in a case like Adan's.

## Argument

In Mr. Adan's case, the parties agree that a sentence of probation, with no additional jail or prison time, is sufficient but not greater than necessary to comport with the statutory goals articulated in 18 U.S.C. §3553.

### I. The Nature and Circumstances of the Offense

The Feeding our Future cases involve a massive fraud scheme with hundreds of players, some major, some minor. Adan's misdemeanor plea recognizes that he played a far smaller role in the scheme than any other charged defendant. Adan is, to date, the only defendant that the U.S. Attorney's office has offered a misdemeanor resolution to.

Adan's conduct consists only in receiving money from Lake Street Kitchen, a business he owned, which he knew originated as proceeds of Liban Alishire's fraud. Per the terms of the plea agreement, the total amount of money that he knew to be stolen did not exceed $1,000.

## II.     The History and Characteristics of the Defendant

Adan's history and characteristics demonstrate that this offense represents a one-time lapse in judgment for an otherwise admirable individual. Adan has no prior criminal record of any kind (even a speeding ticket), and has scrupulously kept to the terms of his probation during the very long pendency of this case, which was originally charged in September of 2022.

Adan is industrious: his biography demonstrates that he is committed to working and improving his own life and the lives of those in his community. Adan arrived in the United States in 1999 as a cab driver, but worked up from that to the owner of the JigJiga business center.

Adan is charitable: over the course of his life he has donated more than $150,000 to charitable causes in Ethiopia. His charitable interests focus around the people in the area he was born in, which is periodically plagued by famine and drought. Adan has not forgotten his roots in one of the most impoverished areas of Ethiopia, although now an

American citizen, he remembers his days in Jigjia where he and the other children walked barefoot to school, and were often hungry all day long.

Adan sponsored a major well-digging project in 2023, contributed a significant quantity of food aid to several villages in the region in 2022, and recently donated money to build a community center in the Lagahida district, where he has family connections. Construction began in 2021 and was finished this year. The community center provides both social and educational opportunities that do not exist in the area. There is no other learning center for 50 or 60 miles. Adan also pays the salary for the teacher at this center, who is the first teacher ever in this community.

Most importantly, Adan is a proud American. He became a fully naturalized United States citizen on March 7, 2005, and considers this day to be the proudest and happiest day of his life.

### III. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

A sentence to probation is not a free pass by any means. "Offenders on probation are…subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007). "Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *United States v. Knights*, 534 U.S. 112, 119 (2001) (internal quotations removed). These restrictions impose upon Adan and other offenders the gravity of his offense, and are sufficient but not greater than necessary to adequately punish an offender for this federal misdemeanor offense.

6

It is for this reason that the Guidelines recommend a sentence of probation for offenses like Adan's. While the Guidelines are not binding on this court, they are the "product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46. For cases like Adan's, which involve a final offense level of 8 and a criminal history category of I, the overwhelming majority do not receive a sentence of imprisonment. (Doc. 245, ¶ 54). Only about 17% of cases like Adans received a sentence of imprisonment in 2024. *Id.*

## Conclusion

For all these reasons, the Court should sentence Adan to probation and order him to pay the restitution of $1,000 he owes for committing this offense. The Government joins this recommendation, and the Court has already pointed out that it is unusual for the Government and the Defendant to agree to probation. This is a sentence that the guidelines recognize as completely appropriate for an offender like Adan, and the parties agree it is appropriate.

Dated: October 22, 2025            Respectfully submitted,

                                            */s/ William J. Mauzy*
                                            William J. Mauzy (#68974)
                                            William R. Dooling (#0402244)
                                            Mauzy Law Office, PA
                                            650 Third Avenue South
                                            Suite 260
                                            Minneapolis, MN 55402
                                            (612) 340-9108
                                            wmauzy@mauzylawfirm.com
                                            wdooling@mauzylawfirm.com
                                            *Attorneys for Defendant*